**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**SAMUEL & STEIN**
David Stein (DS 2119)
38 West 32nd Street
Suite 1110
New York, New York 10001
(212) 563-9884
dstein@samuelandstein.com

Attorneys for Plaintiffs, Individually
and on behalf of all others similarly
situated

| | |
|---|---|
| Jorge Almonte Ortega, Joel Urena, Manuel Diaz-Minaya, Odalis Berroa Hernandez, and Victor Moreno, on behalf of themselves and all other persons similarly situated, | DOCKET NO. 20-cv-3007 |
| Plaintiffs, | **COMPLAINT** |
| - vs. – | |
| Ernie's Auto Detailing Inc., Ernesto Decena, Bay Ridge Automotive Management Corp., *and other entities controlled by Bay Ridge Automotive Management Corp.*, | |
| Defendants. | |

Plaintiffs Jorge Almonte Ortega, Joel Urena, Manuel
Diaz-Minaya, Odalis Berroa Hernandez, and Victor Moreno, by
and through their undersigned attorneys, for their complaint
against defendants Ernie's Auto Detailing Inc., Ernesto
Decena, Bay Ridge Automotive Management Corp., *and other
entities controlled by Bay Ridge Automotive Management Corp.*,

allege as follows, on behalf of themselves and on behalf of all other persons similarly situated:

## NATURE OF THE ACTION

1.    Plaintiffs Jorge Almonte Ortega, Joel Urena, Manuel Diaz-Minaya, Odalis Berroa Hernandez, and Victor Moreno allege on behalf of themselves and on behalf of other similarly situated current and former employees of defendants Ernie's Auto Detailing Inc., Ernesto Decena, Bay Ridge Automotive Management Corp., *and other entities controlled by Bay Ridge Automotive Management Corp.*, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are entitled to: (i) unpaid wages from defendants for overtime work for which they did not receive overtime premium pay as required by law, and (ii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because defendants' violations lacked a good faith basis.

2.    Mr. Almonte Ortega, Mr. Urena, Mr. Diaz-Minaya, Mr. Berroa Hernandez, and Mr. Moreno, further complain on behalf of themselves and on behalf of a class of other similarly situated current and former employees of defendants, pursuant to Fed. R. Civ. P. 23, that they are entitled to (i) compensation for wages paid at less than the statutory minimum wage; (ii) back wages for overtime work for which defendants

willfully failed to pay overtime premium pay as required by the New York Labor Law §§ 650 et seq. and the supporting New York State Department of Labor regulations; (iii) compensation for defendants' violations of the "spread of hours" requirements of New York Labor Law; (iv) compensation for defendants' violation of the Wage Theft Prevention Act; and (v) liquidated damages pursuant to New York Labor Law for these violations.

### **THE PARTIES**

3.    Mr. Almonte Ortega and Mr. Diaz Minaya are adult individuals residing in Brooklyn, New York.

4.    Mr. Urena is an adult individual residing in Yonkers, New York

5.    Mr. Berroa Hernandez is an adult individual residing in the Bronx, New York.

6.    Mr. Moreno is an adult individual residing in Queens, New York.

7.    Plaintiffs each consent in writing to be a party to this action pursuant to 29 U.S.C. § 216(b); their written consents are attached hereto and incorporated by reference.

8.    Upon information and belief, defendant Ernie's Auto Detailing Inc. ("Ernie's") is a New Jersey corporation with a principal place of business at 404 Clifton Ave., Clifton, New Jersey.

9.   Upon information and belief, defendant Bay Ridge Automotive Management Corp. ("BRAM") is a New York corporation with a New York address of 6401 6th Avenue, Brooklyn, New York and a New Jersey address of 7500 Westside Avenue, North Bergen, New Jersey.

10.  At all relevant times, defendants have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

11.  Upon information and belief, at all relevant times, defendant Ernie's has had gross revenues in excess of $500,000.00.

12.  Upon information and belief, at all relevant times, defendant BRAM has had gross revenues in excess of $500,000.00.

13.  Upon information and belief, at all relevant times herein, defendants have used goods and materials produced in interstate commerce, and have employed at least two individuals who handled such goods and materials.

14.  Upon information and belief, at all relevant times, each of the defendants has constituted an "enterprise" as defined in the FLSA.

15.  Upon  information  and  belief,  defendant  BRAM controls  other  business  entities  that  operate  auto dealerships at which Ernie's employees are assigned to work.

16.  Upon information and belief, at all relevant times Ernie's and BRAM constituted joint employers of plaintiffs within the meaning of the FLSA and NYLL, in that each of the defendants controlled the terms and conditions of plaintiffs' employment.

17.  For example, although on paper plaintiffs were employed by and paid by Ernie's, several of them actually were hired by visiting the respective BRAM dealerships and speaking with the dealerships' managers; they did not learn that they were actually working for Ernie's until they received their first checks and saw the issuing company's name on the checks.

18.  Moreover, plaintiffs were supervised on a daily basis by the BRAM dealerships' managers rather than by an Ernie's manager; they never visited Ernie's offices and rarely saw anyone from Ernie's offices except when their checks were delivered.

19.  Additionally, dealership employees set plaintiffs' work hours and participated in setting plaintiffs' pay.  For example, Mr. Urena received one of his raises by speaking to the Lexus dealer's service manager. And when Mr. Diaz-Minaya

asked Ernie's for a raise, he was told that he would not receive one unless the dealer agreed. Furthermore, Mr. Moreno's hours were eventually cut by the Audi dealership's general manager because, the general manager told him, the dealership could not afford to pay him for all of the hours he had been working.

20.   Defendant Ernesto Decena is an owner or part owner and principal of Ernie's, who has the power to hire and fire employees, set wages and schedules, and maintain their records.

21.   Defendant Ernesto Decena was involved in the day-to-day operations of Ernie's and played an active role in managing the business.

22.   Defendants constituted "employers" of plaintiffs as that term is used in the Fair Labor Standards Act and New York Labor Law.

### JURISDICTION AND VENUE

23.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.   In addition, the Court has jurisdiction over plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

24.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the acts and omissions giving rise to this cause of action occurred in this district.

## COLLECTIVE ACTION AND CLASS ACTION ALLEGATIONS

25.   Pursuant to 29 U.S.C. § 207, plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of a collective group of persons defined as follows:

> All persons who are or were formerly employed by defendants in the United States at any time since June 12, 2017, to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt drivers and detailers within the meaning of the FLSA, and who were not paid statutory overtime compensation at rates at least one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

26.   Pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), plaintiffs seek to prosecute their New York Labor Law claims on behalf of themselves and a class defined as follows:

> All persons who are or were employed by defendants in New York as drivers and detailers at any time since June 12, 2014, to the entry of judgment in this case (the "Class Period"), and who were not paid the full minimum wage or properly paid overtime compensation, and/or who were not provided with appropriate wage notices or weekly wage statements (the "Class Members").

27.   Prosecution of this matter as a class is necessary because the persons in the putative Class identified above are so numerous that joinder of all members is impracticable.

28.   Although the precise number of such persons is unknown, their identities are readily ascertainable from records within the sole control of defendants, and upon information and belief there are more than 40 members of the putative class during the Class Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.

29.   Plaintiffs will fairly and adequately protect the interests of both the putative Class Members and the Collective Action Members and have retained counsel who are experienced and competent in the fields of employment law and class action litigation.

30.   Plaintiffs' claims are typical of the claims of the putative Class and Collective Action Members, and they have no interests that are contrary to, or in conflict with, those of the putative members of this class action or collective action.

31.   Furthermore, inasmuch as the damages suffered by individual putative Class Members and Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the putative class and collective actions to individually seek redress for the wrongs done to them.

32.   Questions of law and fact common to the members of the putative class and collective actions predominate over questions that may affect only individual members because defendants have acted on grounds generally applicable to all members.

33. Among the common questions of law and fact under the FLSA and New York wage and hour laws common to plaintiffs and other putative Class/Collective Action Members, and that will generate common answers, are the following:

a.   Whether defendants failed and/or refused to pay the plaintiffs and the Collective Action Members premium pay for hours worked in excess of forty per workweek, in violation of the FLSA and the regulations promulgated thereunder;

b.   Whether defendants failed and/or refused to pay the plaintiffs and the putative Class Members premium pay for hours worked in excess of forty per workweek, in violation of New York wage and hour laws and the regulations promulgated thereunder;

c.   Whether defendants failed and/or refused to pay plaintiffs and the putative Class Members at a rate at least equal to the statutory minimum wage,

in violation of New York wage and hour laws and the regulations promulgated thereunder;

d. Whether defendants failed and/or refused to pay plaintiffs and the putative Class Members "spread of hours" bonuses on days when they worked shifts lasting in excess of ten hours from start to finish, in violation of New York wage and hour laws and the regulations promulgated thereunder;

e. Whether defendants failed and/or refused to provide the plaintiffs and the putative Class Members with the wage notices and the weekly pay statements required by New York Labor Law §§ 195.1, 195.3, and the Wage Theft Prevention Act;

f. Whether defendants' violations of the FLSA were willful, or not made in good faith, as those terms are used within the context of the FLSA; and

g. Whether defendants' violations of New York Labor Law were willful, or not made in good faith, as those terms are used within the context of New York Labor Law.

34. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a collective action or class action.

35.   The   Collective   Action   Members   are   similarly situated   to   plaintiffs   in   that   they   were   employed   by defendants   as   non-exempt   drivers   and   detailers,   and   were denied   premium   overtime   pay   for   hours   worked   beyond   forty hours   in   a   week.

36.   They   are   further   similarly   situated   in   that defendants   had   a   policy   and   practice   of   knowingly   and willfully   refusing   to   pay   them   overtime.

37.   The   plaintiffs   and   the   Collective   Action   Members and   Class   Members   perform   or   performed   the   same   primary duties,   and   were   subjected   to   the   same   policies   and   practices by   defendants.

38.   The   exact   number   of   such   individuals   is   presently unknown,   but   is   known   by   defendants   and   can   be   ascertained through   appropriate   discovery.

## FACTS

39.   At   all   relevant   times   herein,   defendant   Ernie's owned   and   operated   a   business   that   supplied   labor   to   car dealerships,   in   the   form   of,   *inter   alia*,   drivers   and   auto detailers.

40.   At   all   relevant   times   herein,   defendant   BRAM   owned and   operated   a   chain   of   car   dealerships   in,   *inter   alia*, Manhattan   and   Brooklyn,   as   well   as   in   New   Jersey.

41. Among the dealerships owned and operated by the BRAM defendants at times relevant to this case were Audi, Chevrolet, and Lexus dealerships in Brooklyn, and Lexus and Toyota dealerships in Manhattan (collectively, the "BRAM dealerships").

42. Defendant Ernie's assigned plaintiffs and other employees to work for the BRAM dealerships (as well as for dealerships owned by other entities).

43. Specifically, plaintiffs were employed by defendants as follows:

     a. Mr. Almonte Ortega was employed as a driver at the Bay Ridge Chevrolet dealership from roughly June 2018 through June 2019.

     b. Mr. Urena was employed as a driver at the Bay Ridge Lexus, Chevrolet, and Audi dealerships from approximately December 2016 through July 2019.

     c. Mr. Diaz-Minaya was employed as a driver at the Bay Ridge Chevrolet dealership from roughly October 2018 through April 2019.

     d. Mr. Berroa Hernandez was employed as a detailer at a BMW dealership in White Plains, at Lexus and Toyota dealerships in Manhattan, and at the Bay Ridge Lexus dealership from about June 2014 through November 2019.

   e.  Mr. Moreno was employed as a detailer at the Bay
       Ridge Audi dealership from approximately December
       2018 through December 2019.

44.  As drivers, Mr. Almonte Ortega's, Mr. Urena's, and
Mr. Diaz-Minaya's duties included delivering cars from one
dealership to another and also moving cars around within the
dealership to which they were assigned.

45.  Mr. Berroa Hernandez and Mr. Moreno's primary
duties involved detailing vehicles for the dealers.

46.  Plaintiffs' work was performed in the normal course
of defendants' business and was integrated into the business
of defendants, and did not involve executive or
administrative responsibilities.

47.  At all relevant times herein, plaintiffs were
employees engaged in commerce and/or in the production of
goods for commerce, as defined in the FLSA and its
implementing regulations.

48.  Plaintiffs worked regular schedules during their
employment, as follows:

   a.  For about six months, Mr. Almonte Ortega worked
       six eleven-hour days per week, for a total of
       about 66 hours per week; thereafter, he worked six
       ten-hour days per week, for a total of about 60
       hours per week;

b.  For about 1½ years, Mr. Urena worked five eleven-
    hour days and one nine-hour day, for a total of
    about 64 hours per week; in roughly mid-2018 he
    began working four 10½-hour days and one 9½-hour
    day, for a total of about 51½ hours per week.

c.  Mr. Diaz-Minaya started with four ten-hour days
    and two nine-hour days per week, for a total of
    about 58 hours per week; commencing in 2019 he
    worked three eleven-hour days, a ten-hour day, and
    two nine-hour days, for a total of about 61 hours
    per week.

d.  For the first year of his employment, Mr. Berroa
    Hernandez worked five 11½-hour days and one five-
    hour day, for a total of about 62½ hours per week;
    for the next three years he worked five nine-hour
    days and a seven hour day, for a total of 52 hours
    per week; for the final year-and-a-half of his
    employment, he worked five eleven-hour days and a
    ten-hour day, for a total of about 65 hours per
    week.

e.  Until roughly September 2019, Mr. Moreno worked
    six eleven-hour days per week, for a total of 66
    hours per week; thereafter, he worked six ten-

14

hour days per week for a total of about 60 hours per week.

49.   Plaintiffs thus each worked in excess of forty hours per week each week.

50.   Plaintiffs were paid hourly rates of pay, as follows:

    a.   Mr. Almonte Ortega was paid $10.50 per hour when his employment began, and then received a raise to $11.00 per hour after about six months;

    b.   Mr. Urena started at $10 per hour, but received a raise to $11 per hour shortly thereafter; commencing in about July 2018 he received a raise to $12.50 per hour.

    c.   Mr. Diaz-Minaya was paid $10 per hour when his employment began; he was given a raise to $11 per hour in March 2019;

    d.   Mr. Berroa Hernandez was paid $8.50 per hour when his employment began.   In or about 2016 he received a raise to $9.00 per hour. In roughly mid-2018 he received a raise to $10.50 per hour, and then after a few months to $11.00 per hour. Finally, in early 2019 he received a raise to $12.50 per hour;

      e.  Mr. Moreno was paid $10 per hour throughout his employment.

51.  Plaintiffs were paid at the above rates for all of their hours worked.

52.  As a result, plaintiffs' rates of pay were always below the statutory state minimum wages in effect at relevant times.

53.  Defendants' failure to pay plaintiffs an amount at least equal to the New York state minimum wages in effect during all relevant time periods was willful, and lacked a good faith basis.

54.  Plaintiffs were paid by check throughout their employment, but with the exception of Mr. Berroa Hernandez, the checks were business checks rather than payroll checks and were not accompanied by paystubs or wage statements of any kind with their pay.

55.  Mr. Berroa Hernandez was originally paid solely by business check, but after about a year was paid by a combination of payroll check and business check during his employment; his first forty hours of weekly work were paid by payroll check and were accompanied by a paystub reflecting just those forty hours of work; for the remainder of his weekly work hours, he was paid by business check and did not receive any documentation of these hours or pay.

56.   In addition, defendants failed to pay plaintiffs any overtime "bonus" for hours worked beyond 40 hours in a workweek, in violation of the FLSA, the New York Labor Law, and the supporting New York State Department of Labor regulations.

57.   Defendants' failure to pay plaintiffs the overtime bonus for overtime hours worked was willful, and lacked a good faith basis.

58.   For example, when plaintiff Diaz-Minaya asked defendant Ernesto Decena's son Joshua to be paid on the books so he could get overtime pay, he was told that if he was put on the books he would only get 20 hours of work.   And when Mr. Berroa Hernandez asked to be put on the books, defendants split his pay into two paychecks so that only forty hours of his pay was documented.

59.   Plaintiffs each worked multiple shifts per week that lasted in excess of ten hours from start to finish, yet defendants willfully failed to pay them one additional hour's pay at the minimum wage for each such day, in violation of the New York Labor Law and the supporting New York State Department of Labor regulations.

60.   Defendants failed to provide plaintiffs with written notices in their primary language containing the information required by the Wage Theft Prevention Act –

including, *inter alia*, defendants' contact information, their regular and overtime rates, and intended allowances claimed – and failed to obtain their signatures acknowledging the same, upon their hiring or at any time thereafter, in violation of the Wage Theft Prevention Act in effect at the time.

61.   Defendants failed to provide Mr. Berroa Hernandez with compliant weekly records accurately reflecting his compensation and hours worked, in violation of the Wage Theft Prevention Act; defendants failed to provide the other four plaintiffs with any weekly records accurately reflecting their compensation and hours worked, in violation of the Wage Theft Prevention Act.

62.   Upon information and belief, throughout the period of plaintiffs' employment, both before that time (throughout the Class and Collective Action Periods) and continuing until today, defendants have likewise employed other individuals like plaintiffs (the Class and Collective Action Members) in positions at defendant Ernie's company and the BRAM defendants' auto dealerships that required little skill, no capital investment, and with duties and responsibilities that did not include any managerial responsibilities or the exercise of independent judgment.

63.  Defendants applied the same employment policies, practices, and procedures to all Class and Collective Action Members, including policies, practices, and procedures with respect to the payment of overtime.

64.  Upon information and belief, defendants have failed to pay these other individuals at a rate at least equal to the minimum wage, in violation of the New York Labor Law.

65.  Upon information and belief, these other individuals have worked in excess of forty hours per week, yet defendants have likewise failed to pay them overtime compensation of one-and-one-half times their regular hourly rate in violation of the FLSA and the New York Labor Law.

66.  Upon information and belief, these other individuals were not paid a "spread of hours" premium on days when they worked shifts lasting in excess of ten hours from start to finish.

67.  Upon information and belief, these other individuals were not provided with required wage notices or compliant weekly wage statements as specified in New York Labor Law §§ 195.1, 195.3, and the Wage Theft Prevention Act.

68.  Upon information and belief, while defendants employed plaintiffs and the Class and Collective Action members, and through all relevant time periods, defendants

failed to maintain accurate and sufficient time records or provide accurate records to employees.

69.   Upon information and belief, while defendants employed plaintiffs and the Class and Collective Action members and through all relevant time periods, defendants failed to post or keep posted a notice explaining the minimum wage or overtime pay rights provided by the FLSA or New York Labor Law.

### COUNT I

### (New York Labor Law – Minimum Wage)

70.   Plaintiffs, on behalf of themselves and the members of the Class, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

71.   At all relevant times, plaintiffs and the members of the Class were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

72.   Defendants willfully violated plaintiffs rights by failing to pay them compensation in excess of the statutory minimum wage in violation of the New York Labor Law §§ 190-199, 652 and their regulations.

73.   Defendants' failure to pay compensation in excess of the statutory minimum wage was willful, and lacked a good

faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

74.   Due to defendants' New York Labor Law violations, plaintiffs and the members of the class are entitled to recover from defendants their unpaid compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT II

### (Fair Labor Standards Act - Overtime)

75.   Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

76.   At all relevant times, defendants employed plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

77.   At all relevant times, defendants had a policy and practice of refusing to pay overtime compensation to their employees for hours they worked in excess of forty hours per workweek.

78.   As a result of defendants' willful failure to compensate their employees, including plaintiffs and the Collective Action Members, at a rate at least one-and-one-

half times the regular rate of pay for work performed in excess of forty hours per workweek, defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

79. The foregoing conduct, as alleged, constituted a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 260.

80. Due to defendants' FLSA violations, plaintiffs and the Collective Action Members are entitled to recover from defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT III

### (New York Labor Law - Overtime)

81. Plaintiffs, on behalf of themselves and the members of the Class, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

82. At all relevant times, plaintiffs and the members of the Class were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

83. Defendants willfully violated the rights of plaintiffs and the members of the Class by failing to pay

them overtime compensation at rates at least one-and-one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek in violation of the New York Labor Law §§ 650 et seq. and its supporting regulations in 12 N.Y.C.R.R. § 142.

84. Defendants' failure to pay overtime was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

85. Due to defendants' New York Labor Law violations, plaintiffs and the members of the class are entitled to recover from defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT IV

### (New York Labor Law – Spread of Hours)

86. Plaintiffs, on behalf of themselves and the members of the Class, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

87. At all relevant times, plaintiffs and the members of the Class were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

88.   Defendants willfully violated the rights of plaintiffs and the members of the Class by failing to pay them an additional hour's pay at the minimum wage for each day they worked shifts lasting in excess of ten hours from start to finish, in violation of the New York Labor Law §§ 650 *et seq*. and its regulations in 12 N.Y.C.R.R. § 142-2.4.

89.   Defendants' failure to pay the "spread of hours" premium was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

90.   Due to defendants' New York Labor Law violations, plaintiffs and the members of the class are entitled to recover from defendants their unpaid compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT V

### (New York Labor Law – Wage Theft Prevention Act)

91.   Plaintiffs, on behalf of themselves and the members of the Class, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

92.  At all relevant times, plaintiffs were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

93. Defendants willfully violated the rights of plaintiffs and the members of the class by failing to provide them with the wage notices required by the Wage Theft Prevention Act when they were hired, or at any time thereafter.

94. Defendants willfully violated the rights of plaintiffs and the members of the class by failing to provide them with weekly wage statements — or in the case of Mr. Berroa Hernandez, valid weekly wage statements — required by the Wage Theft Prevention Act at any time during their employment.

95. Due to defendants' New York Labor Law violations relating to the failure to provide compliant paystubs, plaintiffs and the members of the class are entitled to recover from the defendants statutory damages of $100 per week through February 26, 2015, and $250 per day from February 27, 2015 through the end of their employment, up to the maximum statutory damages.

96. Due to defendants' New York Labor Law violations relating to the failure to provide wage notices, plaintiffs and the members of the class are entitled to recover from the

defendants statutory damages of $50 per week through February 26, 2015, and $50 per day from February 27, 2015 to the termination of their employment, up to the maximum statutory damages.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and the members of the collective and class actions, respectfully request that this Court grant the following relief:

a. Certification of this action as a class action pursuant to Fed.R.Civ.P. 23(b)(2) and (3) on behalf of members of the Class and appointing plaintiffs and their counsel to represent the Class;

b. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and appointing plaintiffs and their counsel to represent the Collective Action members;

c.  A declaratory judgment that the practices
    complained of herein are unlawful under the FLSA
    and the New York Labor Law;

d.  An injunction against defendants and their
    officers, agents, successors, employees,
    representatives, and any and all persons acting
    in concert with them, as provided by law, from
    engaging in each of the unlawful practices,
    policies, and patterns set forth herein;

e.  A compensatory award of unpaid compensation, at
    the statutory overtime rate, due under the FLSA
    and the New York Labor Law;

f.  Compensatory damages for failure to pay the
    minimum wage pursuant to the New York Labor Law;

g.  An award of liquidated damages as a result of
    defendants' willful failure to pay statutory
    overtime compensation pursuant to 29 U.S.C. § 216;

h.  Compensatory damages for failure to pay the
    "spread of hours" premiums required by New York
    Labor Law;

i.  Liquidated damages for defendants' New York Labor
    Law violations;

j.  Statutory damages for defendants' violation of the New York Wage Theft Prevention Act;

k.  Back pay;

l.  Punitive damages;

m.  An award of prejudgment and postjudgment interest;

n.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.  Such other, further, and different relief as this Court deems just and proper.

Dated:  June 12, 2020

_____
David Stein
SAMUEL & STEIN
38 West 32nd Street
Suite 1110
New York, New York 10001
(212) 563-9884
Attorneys for Plaintiffs

*Individually and on behalf of others similarly situated*

# EXHIBIT A

**CONSENT TO SUE**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Ernie's Auto Detailing Inc. and Bay Ridge Chevrolet and its owners and affiliates to pay me, inter alia, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit. I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de Ernie's Auto Detailing Inc. y Bay Ridge Chevrolet y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos.

Jorge Almonte Ortega

Date: July 17, 2019

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Ernie's Auto Detailing Inc. and Bay Ridge Chevrolet, Audi, and Lexus and their owners and affiliates to pay me, inter alia, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit.  I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de Ernie's Auto Detailing Inc. y Bay Ridge Chevrolet y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos.

_Joel Urena_

Date:  August 19, 2019

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Ernie's Auto Detailing Inc. and Bay Ridge Chevrolet, Audi, and Lexus and their owners and affiliates to pay me, inter alia, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit.  I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de Ernie's Auto Detailing Inc. y Bay Ridge Chevrolet y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos.


Manuel Díaz-Minaya


Date:  October 3, 2019

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Ernie's Auto Detailing Inc. and Bay Ridge Audi and their owners and affiliates to pay me, inter alia, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit.  I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de Ernie's Auto Detailing Inc. y Bay Ridge Audi y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos.

Odalis Berroa Hernández

Date:  December 16, 2019

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Ernie's Auto Detailing Inc. and Bay Ridge Audi and their owners and affiliates to pay me, inter alia, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct.  I consent to the representative plaintiffs in this matter acting as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation and all other matters pertaining to this lawsuit.  I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de Ernie's Auto Detailing Inc. y Bay Ridge Audi y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta.  Doy mi consentimiento para que los demandantes representativos en este asunto actúen como mis agentes para tomar decisiones en mi nombre con respecto al litigio, el método y la manera de llevar a cabo este litigio y todos los demás asuntos relacionados con este juicio.  Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos.

_____
Victor Manuel Moreno Perez


Date:  December 26, 2019