# JacksonLewis

**Jackson Lewis P.C.**
58 South Service Road, Suite 250
Melville NY 11747
(631) 247-0404 Direct
(631) 247-0417 Fax

jacksonlewis.com

MY DIRECT DIAL IS: 631-247-4661
MY EMAIL ADDRESS IS: NOEL.TRIPP@JACKSONLEWIS.COM

December 4, 2020

**VIA ECF**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Rm. 704S
Brooklyn, New York 11201

                  Re:    *Jorge Almonte Ortega, et al. v. Ernie's Auto Detailing Inc., et al.*
                            Civil Case No.:  20-cv-3007

Dear Judge Cogan:

      As counsel for Defendants Ernie's Detailing, Inc. ("Ernie's") and Ernesto Decena (together the "Ernie's Defendants") in the above Fair Labor Standards Act ("FLSA") matter, we write to notify the Court of a recent development ahead of the status conference scheduled for December 8, 2020 at 10:30 a.m. (Minute Order 09/30/2020). As previously noted (Dkt. 24 at 5), there has been an ongoing U.S. Department of Labor ("USDOL") investigation pertaining to the Ernie's Defendants. On December 2, 2020, the USDOL filed an FLSA action in the District of New Jersey. *Scalia v. Ernie's Auto Detailing, et al.*, D.N.J. Case No. 20-cv-17785 (Exhibit A, the "*Scalia*" action). The parties are conferring regarding the impact of *Scalia* on the conditional certification in this matter in light of the FLSA's provision indicating that "The right provided by subsection (b) to bring an action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection"). 29 U.S.C. § 216(c).[1]

      At this time, in light of *Scalia*, the Ernie's Defendants do not believe notice should issue or further consents to join be permitted in *Ortega*. We have notified Plaintiffs' counsel of the foregoing, and they are in the process of formulating their position, but assert that the USDOL's

---

[1] The time periods in the two actions substantially overlap. Ex. A ¶ 2 (USDOL action covering January 2017 to January 2020); Dkt. 37 ¶ 1 (conditional certification from October 2017 to October 2020).

**JacksonLewis**

Hon. Brian M. Cogan
USDC/EDNY
December 4, 2020
Page 2

action does not affect those Plaintiffs who already are part of this case.[2] We thank the Court for its continued attention to this matter.

          Respectfully submitted,

          JACKSON LEWIS P.C.

          *Noel P. Tripp*

          Noel P. Tripp

NPT:dc
cc:    All Counsel of Record (via ECF)

4850-6626-3763, v. 3

---

[2] We have also notified appearing counsel for the USDOL Solicitor's office of the pendency and status of this action.

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
-------------------------------------------------------------------
EUGENE SCALIA, Secretary of Labor, United States  :
Department of Labor,
                                                  :
         Plaintiff,                               **COMPLAINT**
    v.                                            :
                                                  No. 2:20-CV-17785
ERNIE'S AUTO DETAILING INC. and ERNESTO           :
DECENA a/k/a BUENAVENTURA E. DECENA,
individually,                                     :

         Defendants.                              :
-------------------------------------------------------------------

## INTRODUCTION

1.     Plaintiff EUGENE SCALIA, Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action under sections 16(c) and 17 of the Fair Labor Standard Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (the "Act" or the "FLSA"), alleging that Defendants ERNIE'S AUTO DETAILING INC. and ERNESTO DECENA a/k/a BUENAVENTURA E. DECENA (collectively, "Defendants") willfully violated sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, to recover back wages, liquidated damages, and to enjoin acts and practices which violate the provisions of the FLSA, and to obtain other appropriate relief.

2.     Defendants operate an auto detailing business with operations across multiple states employing over 1,500 employees. From January 2017 through at least January 2020 (the "relevant time period"), Defendants systematically and knowingly deprived their employees of required overtime pay. Defendants' willful FLSA violations were widespread, affecting over 1,500 employees who worked at 140 high-end auto dealerships throughout New Jersey, New York, Connecticut, and Pennsylvania and Defendants' New Jersey auto shop (the "worksites").

Defendants' employees—car detailers, car washers, drivers, and valets—regularly worked 45 to 70 hours per week, and as many as 90 hours, without receiving any overtime pay. Well aware of their obligations to pay overtime, Defendants developed multiple payment schemes to hide their violations and feign compliance with the FLSA. For example, they misrepresented employee hours and pay rates on their payroll documents and deceptively paid some employees with multiple checks from different bank accounts, or by check and cash. In all instances, Defendants paid employees only their hourly rate for their hours worked without overtime premiums as required under the FLSA.

3. As a result, Defendants willfully and repeatedly violated the overtime and recordkeeping requirements of the FLSA.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

5. Venue is proper in the United States District Court for the District of New Jersey because Defendants are residents of New Jersey, where this district is located, *see* 28 U.S.C. § 1391(b)(1), and a substantial part of the events and/or omissions giving rise to the claims occurred in this district, *see* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### The Parties

#### Plaintiff

6. Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages and is the proper Plaintiff for this action.

## Corporate Defendant

7. Defendant Ernie's Auto Detailing Inc. ("Ernie's Auto Detailing") is a corporation organized under the laws of the state of New Jersey, having its office address at 404 Clifton Avenue, 2nd Floor, Clifton, NJ 07011, and an auto shop at 12 Lawrence Street, Belleville, NJ 07109 (the "New Jersey auto shop"), within the jurisdiction of this Court, where it has been engaged in the business of auto detailing and related services.

8. Ernie's Auto Detailing provided car detailing, interior car cleaning, car washing, driving, and valet services at its New Jersey auto shop during the relevant time period.

9. Ernie's Auto Detailing provided car detailing, interior car cleaning, car washing, driving, and valet services at approximately 140 car dealerships throughout New Jersey, New York, Connecticut, and Pennsylvania during the relevant time period.

10. Ernie's Auto Detailing employed car detailers, car washers, drivers, and valets to clean car interiors, detail car exteriors, wash cars, drive cars from one worksite to another, and pick up customers during the relevant time period.

11. During the relevant time period, Defendants' employees worked at approximately 87 worksites in New Jersey, 52 worksites in New York, 3 worksites in Connecticut, and 1 worksite in Pennsylvania.

12. Ernie's Auto Detailing has regulated the employment of all persons employed by it, acting directly and indirectly in its interest in relation to the employees during the relevant time period. Thus, Ernie's Auto Detailing is an employer of its employees within the meaning of section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of section 3(a) of the Act, 29 U.S.C. § 203(a).

Individual Defendant

13. Defendant Ernesto Decena a/k/a Buenaventura E. Decena ("Decena") resides in the state of New Jersey, within the jurisdiction of this Court.

14. Decena is the owner of Ernie's Auto Detailing.

15. Decena is the president of Ernie's Auto Detailing.

16. Decena is and has been in active and operational control and management of Ernie's Auto Detailing throughout the relevant time period.

17. Decena has negotiated contracts and contract renewals between Ernie's Auto Detailing and car dealership companies where Defendants' employees performed car detailing, car washing, driving, valet, and other services during the relevant time period.

18. Decena has had the authority to hire Defendants' employees to work at Defendants' New Jersey auto shop and car dealerships in New Jersey, New York, Connecticut, and Pennsylvania during the relevant time period.

19. Decena did hire Defendants' employees to work at the worksites during the relevant time period.

20. Decena has had the authority to assign or transfer Defendants' employees from one worksite to another worksite during the relevant time period.

21. Decena did assign or transfer Defendants' employees from one worksite to another worksite during the relevant time period.

22. Decena has had the authority to determine the rate of pay of Defendants' employees at the worksites during the relevant time period.

23. Decena did determine the rate of pay of Defendants' employees at the worksites during the relevant time period.

24. Decena decided to compensate Defendants' employees at their hourly rate for all hours worked without paying overtime premiums during the relevant time period.

25. Decena has the authority to determine the work schedules of Defendants' employees at the worksites during the relevant time period.

26. Decena did determine the work schedules of Defendants' employees at the worksites during the relevant time period.

27. Decena has had the authority to direct Defendants' employees at the worksites on how to perform their work during the relevant time period.

28. Decena did direct Defendants' employees at the worksites on how to perform their work during the relevant time period.

29. Decena has had the authority to direct Defendants' employees on how to perform their work by communicating such orders to Defendants' supervisorial employees at the worksites during the relevant time period.

30. Decena did direct Defendants' employees on how to perform their work by communicating such orders to Defendants' supervisorial employees at the worksites during the relevant time period.

31. Decena has had the authority to fire Defendants' employees during the relevant period.

32. Decena visited the worksites during the relevant time period to examine the work performed by Defendants' employees, give orders to employees, distribute wages, troubleshoot problems, or renew a contract with a car dealership.

33. For example, at the New Jersey auto shop, Decena regularly visited to distribute employees' wages and give orders to employees during the relevant time period.

34. As another example, Decena visited some of the New Jersey car dealership worksites between one and four times per month during the relevant time period.

35. Decena signed pay checks from Ernie's Auto Detailing to Defendants' employees during the relevant time period.

36. Decena has regulated the employment of all persons he employed and acted directly and indirectly in the interest of Ernie's Auto Detailing in relation to the employees during the relevant time period. He is thus an employer of the employees within the meaning of section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of section 3(a) of the Act, 29 U.S.C. § 203(a).

## Defendants Are an Enterprise Engaged in Commerce

37. The business activities of Defendants, as described herein, are related and performed through unified operation or common control for a common business purpose and constitute an enterprise within the meaning of section 3(r) of the Act, 29 U.S.C. § 203(r).

38. Ernie's Auto Detailing has had an annual gross volume of sales made or business done in an amount not less than $500,000 for the entire period covered by this Complaint.

39. The enterprise has employees handling and using goods or materials that have been moved in or produced for commerce, such as cars, cleaning supplies, tools, and other equipment needed to perform their duties.

40. Therefore, the employees are employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

**Defendants' Prohibited Wage and Hour Practices**

<u>Failure to Pay Overtime Premiums</u>

41. During the relevant time period, Defendants used a variety of schemes to conceal their failure to pay any overtime premiums to employees who worked more than 40 hours in a given week, as required by the Act.

42. At all times during the relevant time period, Defendants paid their employees at a single hourly rate for all hours worked in a workweek.

43. During the relevant time period, Defendants paid employees hourly rates as low as $8.50 per hour, and for some employees, their hourly pay rate was lower than the applicable state minimum wage.

44. At all times during the relevant time period, Defendants did not pay their employees a premium of one and one-half times the employees' regular rates for hours worked in excess of 40 hours in a workweek

45. Defendants' employees regularly worked between 45 to 70 hours per week during the relevant time period.

46. For some workweeks during the relevant time period, Defendants employees worked more than 70 hours per week and as many as 80 hours per week.

47. Some of Defendants' employees worked as many as approximately 90 hours per week during the relevant time period.

48. Defendants' employees typically worked six days per week, Monday through Saturday, during the relevant time period.

49. In overtime workweeks, Defendants' employees typically worked between 8 and 14 hours per day with an average of approximately 10.5 hours per day, Monday through Friday during the relevant time period.

50. In overtime workweeks, Defendants' employees typically worked between 6 to 12 hours per day with an average of approximately 9 hours per day on Saturday during the relevant time period.

51. At most worksites, Defendants used a time keeping system called Time Station to keep track of their employees' hours worked each week during the relevant time period.

52. During the relevant time period, most of Defendants' employees accessed Time Station by using a cell phone or tablet to clock in when they began working and clock out when they finished working.

53. The time records maintained in the Time Station system accurately reflect Defendants' employees' weekly hours worked.

54. At some worksites, Defendants' employees clocked in and clocked out using time cards rather than Time Station.

55. As a result of their use of the Time Station system and other time cards, Defendants knew how many hours their employees worked each week during the relevant time period.

56. Despite knowing the actual hours that their employees worked, Defendants misrepresented their hours worked on the payroll records.

57. For example, Defendants' time records show that for every workweek from week ending July 8, 2018 through January 26, 2020 (except for week ending November 30, 2019), an

8

auto detailer at a worksite in New Jersey worked at least 44.37 hours and as many as 80.32 hours per week with an average of 66.12 hours per week.

58. However, for the week ending July 8, 2018 through at least February 3, 2019, Defendants' payroll records falsely show that this auto detailer worked only 40 hours each of the workweeks described in the preceding paragraph.

59. As another example, Defendants' time records show that for every workweek from week ending September 16, 2018 through January 26, 2020 (except for the week ending November 30, 2019), a driver at a worksite in New Jersey worked at least 44.05 hours and as many as 76.85 hours per week with an average of 62.64 hours per week.

60. However, Defendants' payroll records falsely show that this driver worked only 30 hours each week from November 11, 2018 through February 23, 2019.

61. As a third example, Defendants' time records show that for almost every workweek from week ending April 29, 2018 through January 26, 2020, a car washer at two worksites in New York worked at least 44.35 hours and as many as 62.17 hours per week with an average of 55.81 hours per week.

62. However, Defendants' payroll records falsely show that this car washer worked only 40 hours each of the workweeks from week ending May 13, 2018 through December 16, 2018.

63. On occasions, Defendants' payroll records show employees worked some overtime hours in a week. However, even when Defendants' payroll records reflect some overtime hours worked by an employee, Defendants underrepresented the actual number of hours worked by the employee during the relevant time period.

9

64. For example, for every workweek from week ending February 5, 2017 through April 2, 2017, Defendants' time records show an auto detailer at a worksite in New York worked between 48.45 hours and 65.18 hours per week with an average of 58.43 hours per week.

65. Yet, Defendants' payroll records falsely show that this employee worked only between 4.68 and 5.39 overtime hours in the workweeks described in the preceding paragraph.

66. Regardless of the amount of hours and pay rates shown in the payroll records, Defendants paid employees their hourly rate for all hours worked in overtime workweeks without an overtime premium during the relevant time period as required by the Act.

67. To conceal their failure to pay overtime as required by the Act, Defendants used multiple schemes to simulate compliance with the Act.

68. During the relevant time period, Defendants paid employees using multiple methods: (a) with one non-payroll check; (b) two checks, each from a different bank account; or (c) by check and cash.

*Concealing Failure to Pay Overtime with a Non-Payroll Check*

69. During the relevant time period, some of Defendants' employees who worked overtime hours received one non-payroll check for all hours worked at their hourly rate without any overtime premiums.

70. For example, for the week ending July 8, 2018, Defendants' time records show an auto detailer at a worksite in New Jersey worked 69.13 hours.

71. According to Defendants' records, Defendants paid this auto detailer $691 with one check, which noted on the memo line that it was for "Week of 7/2/18-7/8/18."

72. Thus, in this example, Defendants paid this employee an hourly rate of $10 for all hours worked without any overtime premium.

10

73. Defendants paid some employees with a non-payroll check to avoid paying overtime at one and one-half times employees' regular rates for all hours worked in excess of 40 each week during the relevant time period.

*Concealing Failure to Pay Overtime with Two Checks*

74. During the relevant time period, Defendants paid some employees who worked overtime with two checks, one payroll check and one non-payroll check from a different bank account, for all hours worked at their hourly rate without any overtime premiums.

75. For example, for the week ending August 20, 2017, Defendants' time records show an auto detailer at a worksite in New Jersey worked 59.32 hours.

76. For this same week, Defendants used two checks to pay this auto detailer. According to Defendants' records, Defendants issued a check from payroll for $380 for 40 hours, and a second check for $183, for a total of $563 for the workweek. The second check, which came from a different bank account, noted "Week of 8/14/17-8/19/17" on the memo line.

77. Thus, in this example, Defendants paid this auto detailer an hourly rate of approximately $9.50 per hour for all hours worked without any overtime premium.

78. As another example, for the week ending October 28, 2018, Defendants' time records show an auto detailer at a worksite in Connecticut worked 59.27 hours.

79. For the same week, Defendants' used two checks to pay this auto detailer. According to Defendants' records, Defendants issued a check from payroll for $480 for 40 hours, and a second check for $231, for a total of $711 for the workweek ending October 28, 2018. The second check, which came from a different bank account than the first check, noted "Week of 10/22/18-10/28/18" on the memo line.

11

80. Thus, in this example, Defendants paid this auto detailer an hourly rate of $12 per hour for all hours worked without any overtime premium.

81. Defendants paid some employees with two checks in the same workweek to avoid paying overtime at one and one-half times employees' regular rates for all hours worked in excess of 40 each week during the relevant time period.

*Concealing Failure to Pay Overtime with Check and Cash Payments*

82. During the relevant time period, Defendants paid some employees who worked overtime by check and cash for the same workweek.

83. Defendants paid employees by cash and check for the same workweek to avoid paying overtime at one and one-half times employees' regular rates for all hours worked in excess of 40 each week during the relevant time period.

84. Accordingly, Defendants failed to pay employees at one and one-half times their regular rate of pay in weeks they worked in excess of 40 hours during the relevant time period.

<u>Inadequate and Inaccurate Recordkeeping Practices</u>

85. At all relevant times during the relevant time period, Defendants did not maintain and preserve adequate and accurate records of their employees, and of the wages, hours, and other conditions of employment as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

86. Specifically, at all relevant times, Defendants failed to keep adequate and accurate records of, among other things, their employees' overtime pay rate and actual wages paid.

87. As described in the above examples, Defendants' payroll records did not accurately reflect the number of hours that employees worked or their actual pay rate and wages received during the relevant time period.

88. When Defendants' employees used a different timekeeping method than Time Station, Defendants failed to maintain and keep adequate and accurate records of these employees' actual daily and weekly hours of work during the relevant time period.

### Defendants' Actions are Willful

89. Defendants knew of their obligations to pay their employees in compliance with the FLSA and to keep accurate records.

90. As is evident from Defendants' payroll records, Defendants falsified payroll records to reflect 40 hours or fewer worked per week.

91. Even when Defendants' payroll records reflected overtime hours, Defendants underrepresented the actual hours worked and manipulated employees' hours and pay rates to falsely show that they paid an overtime premium in an attempt to conceal their violations and simulate compliance with the FLSA.

92. Defendants have willfully and repeatedly violated the provisions of the Act as alleged above.

### Statute of Limitations Tolling Agreement

93. The Defendants and the Secretary knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement (the "tolling agreement").

94. The tolling agreement tolled the applicable statute of limitations from January 28, 2020, until and including December 1, 2020 for a total of 309 days.

95. Accordingly, this Complaint filed on December 2, 2020 shall be deemed to have been filed 309 days prior to the actual filing date, or January 28, 2020.

## FIRST CAUSE OF ACTION
**Violation of Sections 7(a) and 15(a)(2) of the FLSA, Failure to Pay Overtime**

96. The Secretary incorporates by reference and realleges the allegations in paragraphs 1 through 95 of the Complaint.

97. During the relevant time period and possibly through the present, Defendants have willfully and repeatedly violated sections 7 and 15(a)(2) of the Act by employing employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than 40 hours, as prescribed in section 7 of the Act, without compensating the employees for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.

98. Therefore, Defendants are liable for unpaid overtime compensation owing to their employees under section 7 of the Act and an additional equal amount as liquidated damages pursuant to section 16(c) of the Act or, in the event liquidated damages are not awarded, overtime compensation and prejudgment interest on said overtime compensation under section 17 of the Act.

## SECOND CAUSE OF ACTION
**Violation of Sections 11(c) and 15(a)(5) of the FLSA, Recordkeeping**

99. The Secretary incorporates by reference and realleges the allegations in paragraphs 1 through 95 of the Complaint.

100. During the relevant time period and possibly through the present, Defendants have willfully and repeatedly violated the provisions of sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

14

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

(1) An injunction issued pursuant to section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with Defendants, from violating the provisions of sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

(2) An order pursuant to section 16(c) of the Act finding Defendants liable for unpaid overtime compensation found due Defendants' employees listed on attached Exhibit A and an equal amount of liquidated damages (additional overtime compensation and liquidated damages may be owed to certain employees presently unknown to the Secretary for the period covered by this Complaint);

(3) In the event liquidated damages are not awarded, an order pursuant to section 17 of the Act restraining Defendants and their officers, agents, servants, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime compensation found due Defendants' employees and prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621;

(4) An order compelling Defendants to reimburse the Secretary for the costs of this action; and

(5) An order granting such other relief as the Court may deem necessary or appropriate.

DATED:  December 2, 2020
        New York, New York

                                        KATE S. O'SCANNLAIN
                                      Solicitor of Labor

                                      JEFFREY S. ROGOFF
                                      Regional Solicitor

                                      /s Amy Tai
                                      AMY TAI
                                      Senior Trial Attorney
                                      U.S. Department of Labor
                                      Office of the Solicitor
                                      201 Varick Street, Room 983
                                      New York, NY 10014
                                      Tel: 646.264.3653
                                      Fax: 646.264.3660
                                      Tai.amy@dol.gov
                                      NY-SOL-ECF@dol.gov

                                      *Attorneys for Plaintiff Secretary of Labor Eugene Scalia*